**BLISS REALTY, INC., Plaintiff-Appellant, v. DARASH et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22321. Decided January 21, 1952.

340

Celeste & Taber, Cleveland, for plaintiff-appellant.
W. P. Newton, F. T. Cullitan, County Prosecutor, Cleveland, for defendants-appellees.

## OPINION

By SKEEL, PJ.:

This appeal comes to this court on questions of law from a judgment for the defendants entered in the Common Pleas Court of Cuyahoga County. The action is one for a declaratory judgment.

The plaintiff's petition alleges that on November 15, 1943, it purchased certain property, a part of which is therein described as parcel No. 1 and that on November 9, 1945 the plaintiff became the owner of land described in the petition as parcel No. 2 together with more land. The petition further alleges that the two parcels are adjacent to each other and together form a lot with a frontage of 50 feet on Babbitt Road with a depth of 150 feet. The two parcels together are described in the petition as parcel No. III. It is also alleged that for the purpose of imposing certain restrictions on said lot, said parcels as a single lot were deeded to one Elizabeth L. Hayes and by her in like manner deeded back to the plaintiff. The petition alleges that the taxes on Parcel No. II became delinquent and were certified to the County Auditor as provided by §5704 GC in 1932 and such certificate of delinquency was then properly advertised as provided by law. The petition further alleges that the taxes on parcel No. 1 became delinquent in 1946. Both parcels as a single lot were certified delinquent in July, 1947 as required by §5704 GC, but such certification of delinquency was not advertised as required by said section. The petition alleges in January, 1949 both parcels as a single lot were certified by the County Board of Review to the County Prosecutor and upon application made to the Common Pleas Court of Cuyahoga County, the court upon recommendation of the County Board of Review by entry date February 18, 1949, forfeited said lot to the State of Ohio for non-payment of real estate taxes which forfeiture was within the two-year period prescribed by §5718 GC. The petition further alleges that the defendant, Nicholas Darash, by deed dated May 4, 1949, became the purchaser of said lot at the County Auditor's forfeited land sale and that since that time he has claimed title adverse to the plaintiff and refuses to relinquish possession.

The plaintiff's prayer asked the court to declare the respective rights of the parties to parcels I and II and asks that its title be declared to be superior to that of the defendant, Nicholas Darash.

The petition was filed March 27, 1951.

Defendants, the County Auditor and Darash, filed separate demurrers to the plaintiff's petition. The demurrer of the County Auditor was grounded on the claim that the action was not brought within the limit of time provided by §5762-1 GC. The demurrer of the defendant, Darash, while not clearly setting forth the grounds relied upon, by its brief indicates that he claims that the action is barred by the statute of limitations and second, that the allegations of the petition

under the circumstances, are not sufficient to state a cause of action.

The court sustained both demurrers and entered judgment for the defendants and by its appeal, the plaintiff claims the following errors:

"1. The Trial Court erred in sustaining the Defendant's Demurrers on the grounds that the action was not brought within the time specified for bringing such actions

"2. The Trial Court erred in sustaining the Demurrer of Defendant Nicholas Darash on the grounds that the action was a collateral attack on the judgment of The Court of Common Pleas

"3. The Trial Court erred in sustaining the Demurrer of Appellee Darash on the grounds that the Court of Common Pleas did not have jurisdiction of the cause of action

"4. The Trial Court erred in sustaining the Demurrer of Appellee Darash on the theory that the petition failed to state a cause of action."

So far as parcel No. 2 is concerned, by the allegations of the petition, the taxes became delinquent in 1932, such delinquency was properly published and all subsequent procedural steps looking to forfeiture and sale of forfeited lands with respect to such parcel followed without deviation the requirements of the applicable statutes. So as to parcel No. 2, no case is stated in the petition. As to parcel No. 1, which is the rear end of the lot (parcel No. III), the plaintiff failed to pay the taxes due after 1945 and it was then certified delinquent by the County Auditor in 1947.

Part Second: Title I. Taxation Chapters 14 and 15, §5704 to 5773 GC, provide the manner in which public authorities shall proceed to collect delinquent real estate taxes.

Sec. 5704 GC in part provides:

"Immediately after each August Settlement, the County Auditor shall make and certify a list and duplicate thereof of all the delinquent lands in his county." * * *

The section further provides that, with certain exceptions here not important, it shall be his mandatory duty to cause a list of the delinquent lands to be published, after a "display notice" has first been published.

According to the allegations of plaintiff's petition, parcel No. 3 (which was parcels No. 1 and 2 combined) was certified delinquent in July, 1947, but no publication as provided by §5704 GC was made.

Sec. 5718 GC provides in substance that after the expiration of two years the County Auditor shall make a duplicate certificate of each delinquent tract of land upon which the

taxes, assessments, penalties and interest have not been paid showing the amount due and stating there "that the same has been certified to the prosecuting attorney as delinquent."

Two methods are provided for dealing with real estate upon which the taxes have become delinquent, that is first by foreclosure and second by forfeiting such lands to the state and a subsequent auditor's sale thereof.

Sec. 5718-1 GC in substance provides that before delinquent lands are certified to the prosecuting attorney as provided in §5718 GC the County Board of Revision shall examine the list of delinquent lands and if, in their judgment, certain parcels thereof will not bring enough at foreclosure to pay the total tax charged against it and the costs of foreclosure, then such board shall cause such land to be omitted from foreclosure proceedings.

Sec. 5718-1a GC provides that a list of omitted lands shall be made by the Auditor and filed with prosecuting attorney who shall file an application in the Common Pleas Court setting forth the action of the Board and praying for an order fixing a date for a hearing of objections to the action of the Board and upon hearing to seek an order confirming the action of the Board as to omitted lands and forfeiting such lands to the state of Ohio.

Sec. 5718-1b GC provides for the publishing of notice at the time such application will be heard and in which the names of the owners shall be set forth as provided by §5704 GC, the form of the notice and the number of publication being set forth in the statute.

Sec. 5718-1c GC provides for the hearing of such application by the court for the purpose of hearing any written "legal objections" filed with the court or oral "legal objections" presented by persons attending the proceeding and * * * "If it appears that such proceedings were regular and in conformity with law, the court shall so find and such finding **shall not be collaterally attacked.** The court shall thereupon confirm the action of the board of revision and shall order such lands forfeited to the state of Ohio. Such lands shall thereupon be forfeited to the state of Ohio and disposed of as provided by Chapter 15 of this title." * * *

This section also provides that the term "legal objection" as used above shall include:

"That the lists provided for in §§5704 and 5718-1b GC, have not been published according to law."

This section also provides for an appeal from the order of forfeiture as in all other civil actions.

The plaintiff's petition as above set forth alleges that upon the recommendation of the county board of review the Com-

mon Pleas Court of Cuyahoga County ordered parcel III forfeited to the state of Ohio for non-payment of real estate taxes. Such an allegation includes by necessary implication that such order was made by a court that had acquired jurisdiction of the proceeding as provided by §§5718, 5718-1, 5718-1a, 5718-1b and 5718-1c GC, and that the court in making the order must have found all procedural steps had been taken as provided by law. The order of forfeiture constituted a judgment of the Court. Such judgment can not be collaterally attacked. (Sec. 5718-1c GC.)

The defendant's demurrer admits all allegations of the petition well pleaded. This does not mean that the truth of contradictory allegations are admitted. The judgment of the court ordering forfeiture of the land when considered in the light of the facts necessary to support such judgment as provided by statute is in direct contradition of the allegation that the certificate of delinquency was not published as provided by §5704 GC. If the legal effect of omitting the first publication under §5704 GC, was to void all subsequent steps in dealing with delinquent lands, then these two allegations of fact can not be reconciled. The court could not find, under such circumstances, that the proceedings were regular (§5718-1c GC) and in conformity with law. The judgment which can not be collaterally attacked must, therefore, stand as the plaintiff's claim and the allegation of the failure to publish a list of the delinquent lands after certification· can not be considered as admitted by defendant's demurrer. This being true, plaintiff's petition does not state a cause of action.

In the case of Lewis Auditor v. Taylor, 18 O. C. C. 443, this principle of law was clearly determined. The action was to enjoin the collection of certain assessments put against the plaintiff's property, the proceeds to be used for certain improvements. The petition alleged that the assessments were made under the provisions of an act of the General Assembly of Ohio which, it was alleged, was unconstitutional. The answer alleged knowledge that the improvements were to be made and assessments were to be made against plaintiff's property as provided by the act and if the act was unconstitutional the plaintiffs had knowledge thereof. The Supreme Court had previously held an act similar to the one in question to be constitutional. A demurrer was filed to the answer and the question of what allegations of fact in the answer were admitted by the demurrer was presented. The court said on page 446:

"We may say here before we go to the discussion of the merits of the questions argued by counsel for plaintiffs in

error on the question of estoppel, that the claim is made broadly here that up until the decision of the supreme court in **Hixson v. Burson,** under the prior decision of the Supreme court in the **Hibbs case, 35 Oh St, 458,** that this act and similar acts were constitutional under the decision of the supreme court of the state. Now, how it is possible for a party, whether a lawyer or not, to know that an act is unconstitutional when the supreme court has held that a similar act, one exactly like it, is constitutional, is a matter that this court is not able to determine. Probably it is one of those questions which Judge Shauck says can only be answered by a court of last resort. **56 Oh St, 396.**

"We think that the allegation of knowledge of the unconstitutionality of an act which the supreme court has held to be constitutional is not an allegation of fact, and is not admitted by demurrer." * * *

Coming now to the claimed error in sustaining the demurrer because the action was not brought within the limit of time provided by §5762-1 GC. This section provides:

"In all cases wherein real property in this state is or has been sold under and by virtue of the provisions of chapter 14 or 15 of this title, no action shall be commenced, nor shall any defense be set up to question the validity of the title of the purchasers at such sale for any irregularity, informality or omission in the proceedings relative to the foreclosure, forfeiture or sale, unless such action be commenced or defense set up within one year after the deed to such property is filed for record or one year after the effective date of this act, whichever is longer."

It is the claim of the plaintiff that this section has no application because all of the proceedings subsequent to the certification of delinquency of parcel 3 in 1947 are void for the alleged failure to publish notice of the certificate of delinquency of said lot as provided by §5704 GC. This section provides in part that "It shall be mandatory upon the county auditor to cause a list of the lands on such delinquent land list and duplicate to be published" as therein provided. Assuming for the purpose of this discussion that the allegation in plaintiff's petition that the auditor failed to publish plaintiff's lot designated as parcel No. 3 as certified delinquent is admitted by defendant's demurrer, does such failure destroy the validity of all subsequent proceeding even though all succeeding statutory provisions have been literally followed?

The first step to subject property to the payment of unpaid taxes assessed against it is provided by §5704 GC requiring the auditor after each August settlement to certify in dupli-

cate the list of lands upon which the owners, or those responsible therefore, failed to pay his taxes. Such duty being enjoined by law, every owner is conclusively presumed to have knowledge of the legal steps that will follow the failure to meet his tax obligations. A publication of notice of the list is not necessary for his information. His own failure to act created the delinquency. If there is any purpose to be served by requiring a publication of such list, it must be for the information of the public and not the property owner. The certification of the delinquent list or its publication has no direct effect on the owner's title that had not been created by defaulting in the payment of taxes.

After property has become delinquent, one of two methods is provided for to enforce the tax lien, that is either by foreclosure or by causing the land to be forfeited to the state and then sold in a forfeited land sale by the auditor. The County Board of Review is charged with determining which method will be used as to each property certified delinquent. If the board determines that upon foreclosure the property will not sell for an amount sufficient to pay the taxes and costs of foreclosure, it is authorized to omit such lands from the list certified to the County Prosecutor for foreclosure and the Court Prosecutor is required to present such list in a proceeding in the Common Pleas Court seeking an order or judgment forfeiting such lands to the state. Notice of the time and place of the hearing and the names of the owners of the property must be published as required by §5704 GC. The Court acquires jurisdiction in the proceeding filed in court by the prosecutor by virtue of such publication of notice. The Court having acquired jurisdiction, its judgment becomes final unless appeal is taken.

The statutes provide that after judgment of forfeiture, the auditor can not dispose of the property without another publication of the list of forfeited lands to be sold, the names of the owners, the time and place of the sale and the amount of the delinquency. If foreclosure is the method used to enforce the tax lien against the property on the delinquent land list, it is provided by §5718-3 GC that the action shall proceed the same as an action to foreclose the lien of a mortgage requiring either personal service or constructive service. It is, therefore, evident that the legislature did not intend the first publication of the delinquent land list at the time the land was certified delinquent as jurisdictional. Failure to make such publication even though designated as "mandatory" does not involve the due process clauses of either the state or federal Constitution. The property rights of the plaintiff to his land can not be

disturbed until notice is subsequently given either in an action to order a forfeiture or to institute a foreclosure proceeding.

The Supreme Court in the case of **Miller v. The Lakewood Housing Co., 125 Oh St 152** in considering the effect of failure to publish the list of property certified delinquent under the provisions of §5704 GC before it was amended August 11, 1943, to provide that publication of the list should be mandatory, held by Paragraph 3 of the Syllabus:

"Under the foreclosure proceedings on delinquent lands prescribed by the present Code, the publication by a county auditor of the list of delinquent lands in his county, in accordance with the provisions of §5704 GC, is not mandatory."

And the Court said on page 161—

"Whether a statutory requirement is mandatory or directory depends on its effect. If no substantial rights depend on it and no injury can result from ignoring it, and the purpose of the Legislature can be accomplished in a manner other than that prescribed and substantially the same results obtained, then the statute will generally be regarded as directory; but, if not, it will be mandatory. This is the rule usually followed in this state in deciding whether statutory provisions constitute conditions precedent whose omission invalidates further action under the statute in question."

The procedure for dealing with delinquent lands except for the amendment to §5704 GC and the provision for forfeiting lands to the state when foreclosure is impractical is now the same in principle as when the foregoing case was decided. And, on page 163 of the opinion the Court said:

"Under the new statute, the old tax sale is abolished and regular foreclosure proceedings, forbidden to be begun until taxes are delinquent four years, are provided in lieu thereof, with marshaling of liens and due process by personal service upon the landowner. **Secs. 5717 and 5718 GC.** As the statute now stands, no right of the taxpayer is prejudiced by the failure of the officer to publish the list and notice in accordance with §5704 GC, because now the taxpayer receives ample notice by summons in foreclosure. These provisions as to notice were formerly necessary for the rights of the parties jeopardized by the sale, but they are no longer necessary for the protection of those rights."

We must conclude, therefore, that proceedings subsequent to the alleged failure to publish the certificate of delinquency were not void. The omission, if in fact there was such, should have been presented upon the hearing of the application to forfeit such lands. We must further conclude that because this action was filed more than one year from the date of the

sale, the provisions of §5762-1, *supra,* **GC,** apply and the demurrers of both defendants must be sustained because it was not commenced within the time provided therein.

For the foregoing reasons, the judgment of the Common Pleas Court is affirmed. Exceptions. Order see Journal.

HURD, J, concurs.
THOMPSON, J, dissents.

### DISSENTING OPINION
By THOMPSON, J.

The facts are sufficiently stated in the majority opinion. For purpose of explaining my dissent, I wish to emphasize the language of the petition demurred to, reciting, in effect, that no publication of notice, as provided in §5704 **GC,** was ever made by the County Auditor with respect to parcel No. 1, prior to attempted forfeiture of the parcel in question. In my opinion, the publication required by §5704 **GC** is mandatory and failure to publish invalidated the subsequent forfeiture proceedings and auditor's sale.

That part of present §5704 **GC** pertinent to the instant discussion is as follows:

"It shall be mandatory upon the county auditor to cause a list of the lands on such delinquent land list and duplicate to be published twice, within sixty days after the delivery of the duplicate to the county treasurer, in two newspapers of opposite politics in the English language published in the county and of general circulation therein; provided, however, that, before such publication, it shall also be mandatory upon the county auditor to cause a display notice of the forthcoming publication of the delinquent list and duplicate to be inserted once a week for two consecutive weeks in two newspapers of opposite politics in the English language published in the county and of general circulation therein."

Apparently no Ohio case has directly passed upon the meaning of the last quoted language, effective August 11, 1943. An earlier form of §5704 **GC** as contained in 108 Ohio Laws, Part II, 1243, approved February 18, 1920; was interpreted by the Supreme Court of Ohio in **Miller v. Lakewood Housing Co., 125 Oh St 152,** decided April 6, 1932. The language there under consideration was as follows:

"Each county auditor shall cause a list of delinquent lands in his county to be published once a week for two consecutive weeks, between the 20th day of December and the second Thursday in February, next ensuing, in one daily newspaper in the English language * * *. There shall be attached

to the list a notice that the delinquent lands will be certified to the auditor of state as delinquent, as provided by law."

The Supreme Court of Ohio in the Miller case came to the conclusion that §5704 GC in its then form was not mandatory, but Chief Justice Marshall did not concur in the third paragraph of the syllabus to this effect. In the opinion, the Supreme Court (Judge Allen), reaching the conclusion that the language of §5704 GC then before the Court was directory, and not mandatory, declared in part as follows:

"Whether a statutory requirement is mandatory or directory depends on its effect. If no substantial rights depend on it and no injury can result from ignoring it, and the purpose of the Legislature can be accomplished in a manner other than that prescribed and substantially the same results obtained, then the statute will generally be regarded as directory; but, if not, it will be mandatory. This is the rule usually followed in this state in deciding whether statutory provisions constitute conditions precedent whose omission invalidates further action under the statute in question."

The case of Miller v. Lakewood Housing Co., 125 Oh St 152, interpreting §5704 GC, as enacted in 108 Ohio Laws, Part II, 1243, was followed in a decision by the Supreme Court of Ohio the following year in State ex rel Belt v. Mason, 127 Oh St 574, decided November 22, 1933, affirming 46 Oh Ap 42. This case interpreted §5704 GC as re-enacted in substantially similar language in 114 Ohio Laws 831.

The language we are here called upon to consider appeared for the first time in 116 Ohio Laws 261, passed by the General Assembly on July 16, 1936 and re-enacted in 120 Ohio Laws 154, effective August 11, 1943. It seems to me that the language here before us for consideration differs so substantially from the earlier language that the case of Miller v. Lakewood Housing Co. is inapplicable.

In examining, generally, the principles applicable in determining whether language of a statute is to be construed as mandatory or directory, various tests have been applied. In 50 American Jurisprudence "Statutes," Sec. 24, it is declared:

"There is no well-defined rule by which directory provisions in a statute may, in all circumstances, be distinguished from those which are mandatory. In the determination of this question, as of every other question of statutory construction the prime object is to ascertain the legislative intention as disclosed by the terms of the statute, in relation to the scope, history, context, provisions, and subject matter of the legislation, the spirit or nature of the act, the evil intended to be remedied, and the general object sought to be accomplished."

In Section 25 of the same treatise there is a further discussion of the distinction between mandatory and directory provisions of statutes and in amplification it is stated:

"Generally speaking, those provisions which are a mere matter of form, or which are not material, do not effect any substantial right, and do not relate to the essence of the thing to be done, so that compliance is a matter of convenience rather than substance, are considered to be directory. This is true of statutory provisions for the expeditious, proper, or orderly conduct of business merely. On the other hand, statutory provisions which relate to matters of substance, affect substantial rights, and are the very essence of the thing required to be done, are regarded as mandatory."

In 37 O. Jur., "Statutes," Section 27 discusses the meaning of the word "mandatory." That section declares as follows:

"The word 'mandatory' has been used synonymously with 'indispensable.' A mandatory provision is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding."

See, similarly, State ex rel Jones v. Farrar, 146 Oh St 467 and the first paragraph of the syllabus holding as follows:

"A statute is mandatory where noncompliance with its provisions will render illegal and void the steps or acts to which it relates or for which it provides, and is directory where noncompliance will not invalidate such steps or acts."

Attention is also directed to 37 O. Jur., "Statutes" Sec. 34, concerning the effect of an amendment by the legislature of mandatory or permissive language. It is there stated that the amendment of an existing law by the substitution of the word "may" for the word "shall" manifest a clear legislative intent and purpose to make the action therein referred to permissive rather than mandatory. The section then declares:

"Conversely, when a section of an existing law is amended by the general assembly by striking out therefrom 'may' and inserting in lieu thereof 'shall,' a clear intent is manifested to alter the directory nature of the law and render it mandatory."

Particularly interesting is the discussion in Sec. 441 on the effect of judicial interpretation of statutory provisions. The latter section declares in part as follows:

"In the interpretation of statutory law after an amendment thereof, the courts may take into consideration the construction by earlier decisions of the statute before its amendment.

The body enacting the amendment is presumed to have in mind such judicial construction; and if, in the subsequent statute, it uses different language in the same connection, the presumption arises that a change of law was intended."

See, also, **State ex rel Mittman v. Board of County Commissioners, 94 Oh St 296,** where language in the decision of Chief Justice Nichols has been frequently approved in later decisions. The language referred to is as follows:

"Where, as in the instant case, the general assembly deliberately amends an existing law by striking out **may** and substituting **shall,** it would be absured for the court to deliberately give the meaning of **may** to the newly substituted **shall.** It would indeed be a mockery in the way of construction and would be equivalent to a judicial repeal of the amended act and a judicial reenactment of the former law."

In reaching a decision with respect to the meaning of §5704 GC, in its present amended form, we should note the changed language, expressing what appears to be the clear intent of the General Assembly to make mandatory the advertisement called for by §5704 GC. Whereas most of the cases discussing the question whether words in a statute are to be construd as mandatory or directory have involved circumstances in which a legislature has used the word "may," or the word "shall," the Ohio General Assembly in this instance, presumably, in order that there might be no question as to its intention, not only used the word "shall," when it amended §5704 GC, but went so far as to specify that the advertisement called for "shall be mandatory." This change appears particularly important because the General Assembly took this action very shortly after, and it must be assumed with knowledge of, the Supreme Court's decision declaring that the earlier wording was to be deemed permissive or optional rather than mandatory. Although of course not controlling upon us, we may note that two opinions of the Attorney General of Ohio, shortly after the present law was enacted, expressed the belief that the language of §5704 GC, adopted by the General Assembly after the Ohio Supreme Court's decision in the Miller case, is mandatory with respect to advertisément. See 1937 Opinions, Attorney General, No. 786 and, also, 1938 Opinions, Attorney General, No. 2375.

I believe that only by giving mandatory meaning to the language of §5704 GC are we able to reach the conclusion that the due process rights of the individual are protected as guaranteed by the U. S. Constitution, Amendment XIV, and the **Ohio Constitution, Art. I, Sec. 16.** The majority opinion finds such protection in the publication required by §5718-1b

GC, but the language of that section appears less clearly mandatory and more readily susceptible of directory interpretation than the publication provided for in §5704 GC.

Reverting to the decision of the Ohio Supreme Court in **Miller v. Lakewood Housing Corporation, 125 Oh St 152,** it is not without significance that the case in question is discussed in a note in 81 A. L. R. 1246, entitled "Necessity of publishing list of lands delinquent for nonpayment of taxes, and effect of failure to publish list" and that the note summarizes the law on the subject generally as follows:

"Where a statute requires the publishing of a list of the lands which are delinquent for non-payment of taxes, it is generally held that such statute must be strictly followed, since it is designed to give notice to the landowner of the fact of delinquency and of the amount of the taxes. The cases are numerous holding that an irregular publication in any particular will avoid a subsequent sale of the delinquent lands." * * *

Believing that the present language of §5704 GC, calling for publication of delinquent lands by the county auditor requires a mandatory act, I feel that failure to publish invalidated the subsequent forfeiture proceedings. On that basis, the plaintiff's petition stated a cause of action with respect to parcel I and the provisions of §5762-1 GC, declaring that no action shall be commenced, nor shall any defense be set up, to question the validity of the title of purchasers at tax sale for any irregularity, informality or omission in the proceedings relative to the foreclosure or forfeiture, unless commenced within one year after the deed to the property is filed for record, become, in my opinion, inapplicable. The failure of the auditor in this case to make publication as required by §5704 GC, constituted more than an irregularity, informality or omission, in proceedings and notice was withheld to which the landowner was entitled. If the judgment in the forfeiture proceedings was void because of lack of jurisdiction, it can be collaterally attacked. **23 O. Jur., "Judgments" Sec. 988.** The other questions raised in the briefs on the basis become irrelevant.

I believe the judgment of the trial court should be reversed and the cause remanded with instructions to overrule the demurrers and for further proceedings according to law.